McClartey v. Gokey *et al.*

1. Vendor and vendee: TIME THE ESSENCE OF THE CONTRACT: PAYMENT OF TAXES. Where a contract for the sale of real estate stipulates that, upon the failure of the vendee to pay the sums stipulated as they fall due, or the taxes thereafter accruing, the contract shall be forfeited, and time is stipulated to be the essence of the contract, the contract will not be held forfeited by the failure of the vendee to pay the taxes before they come delinquent, and the payment of the same by the vendor, if the vendee, soon thereafter, tender to him the amount thus paid, with interest.

2. ——TIME OF TENDER. The tender by the vendee, of a payment in the evening, after sundown, of the day on which it falls due, is sufficient under such a contract.

*Appeal from Floyd District Court.*

TUESDAY, JUNE 13.

ACTION in chancery to cancel and declare forfeited and void a contract. for the conveyance of certain lands. Defendants, by cross bill, ask that the contract be enforced and that plaintiff be required to specifically perform it. The petition of plaintiff was dismissed, and the relief prayed for in defendants' cross bill was granted by the decree of the district court. Plaintiff appeals.

McClartey v. Gokey.

*Pratt & Root* for the appellant.

*Starr & Patterson* for the appellees.

BECK, J. — On the 12th of June, 1866, Charles W. Rogers entered into a written contract, to convey to defendants and Andrew Labounty certain lands in Floyd county, conditioned upon the payment of five promissory notes for $256 each, the first to be paid June 12, 1869, and one upon the 12th of June of each succeeding year, until all were paid, together with interest, in the language of the instrument, " at ten per cent per annum each year, commencing on the 12th day of June, 1867." The contract also stipulates that defendants and Labounty " shall pay the taxes hereafter to become due on the said premises, each year." The instrument closes with this condition: " A failure to perform any of the stipulations herein, on the part of the parties of the second part (the defendants), this agreement shall be null and void, time being of the essence of the contract." Labounty sold and transferred all his interest in the premises to plaintiff, and afterward, Rogers conveyed the lands to plaintiff, subject to said contract."

April 15, 1869, plaintiff filed his petition, alleging the breach of the contract by defendants, and asking that it be set aside and canceled and be declared void, on account of the failure of defendants to pay the interest upon the notes and the taxes falling due upon the land. By amended petition, plaintiff admits the payment of certain amounts at different times, which are less than the sums then due, and offers to repay the same and give up or cancel defendants' notes. By a supplemental petition, filed November 15, 1869, he alleges that defendants failed to pay the note and interest falling due June 12, 1869, and repeats the prayer of the original bill.

Defendants in their answer deny their failure to make the several payments of interest and taxes, and in their

answer to the supplemental petition aver that they made a tender of the amount of the note and interest due June 12, 1869. They admit the payment by plaintiff of the taxes for the year 1868 on the 8th of April, 1869, but aver that on the 22d day of May following they made a tender of the amount paid by plaintiff. The amount of the several sums tendered by defendants was paid into court upon the filing of the answer.

Plaintiff claims that the contract is avoided by the failure of the defendants to pay, (1) the taxes as the same fell due; (2) the interest due on the 12th day of June, 1868; (3) the note and interest due June 12, 1869, there being thus, as he insists, three distinct breaches of the contract that work a forfeiture thereof. We will state briefly our conclusions drawn from the evidence upon these points.

I. It is admitted that the taxes for the year 1868 were not paid by defendants before they became delinquent, but after that time were paid by plaintiff. It is not disputed that defendants tendered, soon after, to plaintiff the amount he had paid with interest. While the contract very explicitly provides that "time is the essence of the contract," yet it entirely fails to fix the time when the tax is all to be paid. It simply binds the defendants to pay the taxes that may become due each year. Now it cannot be claimed that defendants are bound to pay the taxes before they become delinquent. As there is no time fixed by the terms of the instrument for their payment, defendants' contract will be performed by payment at any time before or after delinquency. Plaintiff relies upon the strict letter of the contract; he must be content with enforcing conditions that are expressed. He cannot be permitted to claim the forfeiture unless the contract so provides.

II. The evidence quite satisfactorily establishes the payment of the interest falling due June 12, 1868. The defendants both testify to the fact, and are corroborated

by circumstances proved upon the trial. The payment is denied by plaintiff in his own testimony, but he is not corroborated by other evidence. The *onus* rests upon him to establish the breach of the conditions of the contract; this he has failed to do by evidence that overcomes the ᵐositive testimony of defendants as to the payments.

III. The amount of the note and interest falling due on the 12th day of June, 1869, was tendered to plaintiff by the agent of defendants. The only question raised upon this tender is, that it was not made at a sufficiently early hour of the day. It is not claimed that it was not made upon the proper day, but plaintiff insists that it was made too late in the day. The evidence upon this point is conflicting. The agent of defendants making the tender testifies that it was made in the afternoon, before sundown. Plaintiff and his witnesses fix the time after sundown, and at about 8 o'clock. Admitting that the tender was made at the last-named hour, we think it was in time. A note is not dishonored until the close of business hours on the day of its maturity, where, by usage, business is limited to a particular part of the day. When no such usage exists, dishonor will not fall upon it, until the close of the day. 1 Pars. on Notes and Bills, 262. It is not shown that at the place where the tender was made any custom fixing business hours existed. We are not prepared to hold that, in the absence of usage, a note would be dishonored at a half an hour after sundown, the time when the tender was made in this case. We presume that the whole of the day usually devoted to business would be allowed the maker for the payment of his note. We well know that it is usual, except in cities and the larger towns, to transact business at late hours of the day, and even in the night. If a note would not be fully dishonored at the hour the tender was made in this case, it is quite clear the tender was in time. But, without resting our conclusions upon the principles above stated, we are of the opinion that a tender of payment, in

order to discharge the conditions of a contract, may be made at any hour of the day fixed for its performance, when it would not be unreasonable to require the party to whom the tender is made to accept payment. If made, therefore, at night, before the party has retired to rest, and under circumstances which would not impose inconvenience or risk upon him, we think the tender sufficient. The reason of this rule is obvious. The party bound by the contract has the whole of the last day in which to complete its performance. It cannot be said that the day, for that purpose, ends at sundown, or at dark, or at any other hour before its actual termination, if it be reasonable and proper to require the other party to accept performance at such hour. Men who are willing that their debtors should pay them at all are usually prepared, and think it no inconvenience, to accept payments at eight or nine o'clock at night. In the case under consideration, the objection to the payment at the hour of the tender is not founded upon any inconvenience to plaintiff. The true ground of the objection, as is most apparent from the record, is plaintiff's desire to defeat the contract, and thus retain the title of the land contracted to defendants.

The views above expressed are supported by Edwards on Bills and Notes, 496–499.

The decree of the district court is

Affirmed.