HERSEY, Chief Judge.
These are consolidated appeals from two nonfinal orders.
Knight v. Gottfried, Inc. involves a claim for a commission arising out of a contract for the sale of real property. The nonfinal order appealed grants a motion for summary judgment in favor of appel-lee, real estate broker. The difficulty is that the order does only that: grants the motion. It does not contain any language to the effect that appellant is liable for a brokerage commission to appellee. Thus the order does not activate the provisions of rule 9.130(a)(3)(C)(iv), Florida Rules of Appellate Procedure. See, e.g., Aetna Cas. & Sur. Co. v. Meyer, 385 So.2d 10 (Fla. 3d DCA 1980). Therefore, we dismiss this appeal from a nonappealable nonfinal order. Russell v. Russell, 507 So.2d 661 (Fla. 4th DCA 1987).
The order in the Nelson appeal, also one granting a motion for summary judgment, contains a finding that the Knights breached their contract with Nelson. This is equivalent to a holding that the Knights are liable to Nelson, leaving open only the question of damages. This order is therefore encompassed by rule 9.130(a)(3)(C)(iv).
Appellants argue that, while what constitutes a breach of contract is a question of law for the court to determine, whether that which has occurred constitutes a breach of contract is a question of fact for the fact-finder, Winter Garden Citrus Growers’ Ass’n v. Willits, 113 Fla. 131, 151 So. 509 (1933); Olin’s, Inc. v. Avis Rental Car Sys. of Florida, 131 So.2d 20 (Fla. 3d DCA 1961). The facts in this case are undisputed. There were no genuine issues of material fact remaining for a jury to resolve; there was only a question of law for the court to determine after examining the undisputed facts. The trial court correctly found that, as a matter of law, the actions of appellants constituted a breach of their contract with appellees.
Appellants the Knights, as sellers, entered into a contract with appellee Nelson, as buyer, for the purchase and sale of real estate for $650,000 on June 23, 1987. Ap-pellee Gottfried, Inc., was the broker in that transaction. Thereafter Nelson discovered a major title defect in that the Knights had previously conveyed away and leased back the swimming pool, cabana, and a portion of the real property. In view of the title defect, the parties renegotiated the contract and the price was reduced by $125,000. The new contract, dated July 31, 1987, contained the following financing contingency provision: “Should buyer fail to obtain [a loan commitment] or to waive Buyer’s rights hereunder within said time, either party may cancel the contract.” The contract required that Nelson obtain a firm commitment for financing within twenty-one days (i.e., through Friday, August 21, 1987).
Because of the title defect, Nelson’s lender had to satisfy itself again that the property would be adequate security for its contemplated loan. Accordingly, Nelson did not receive his loan commitment until August 25, 1987, four days beyond the date specified in the contract. At no time did the Knights or their broker inform Nelson that the contract was cancelled. On the evening of August 24th, Nelson learned through a realtor’s wife that the property had been shown to another potential buyer on August 22, 1987. The Knights entered into a contract to sell the property to a third party, which contract was dated August 25, 1987, three days before the sched *1126 uled closing with Nelson on August 28, 1987. Because they had entered into another contract, the Knights refused to close with Nelson and this litigation ensued.
It is established that “the vendor cannot take advantage of a delay in performance which he condoned or was a party to.” Forbes v. Babel, 70 So.2d 371, 372 (Fla.1953); see also Jay Vee Realty Corp. v. Jaymar Acres, Inc., 436 So.2d 1053 (Fla. 4th DCA 1983). The delay in this case was caused by the serious title defect caused by the previous actions of the Knights.
The failure to„ obtain timely financing did not constitute an automatic termination of the contract. Where a contract for the purchase and sale of real property provides that the seller may cancel the contract upon the occurrence of a default, the seller must communicate his intention to the buyer. Richards v. Hasty, 158 Fla. 459, 28 So.2d 876 (1947). That intention must be demonstrated to the buyer clearly and unequivocally. Realty Securities Corp. v. Johnson, 93 Fla. 46, 111 So. 532 (1927). There was no such clear and unequivocal communication here until after the Knights had breached their contract with Nelson by entering into a contract with another party.
Even if the language of the contract could be construed as providing for automatic termination, however, the Knights waived any right that they had to require strict compliance. See Zepfler v. Neandross, 497 So.2d 901 (Fla. 4th DCA 1986).
Finding that the trial court correctly applied the applicable law, we affirm.
DELL, J., concurs.
ANSTEAD, J., concurs in part and dissents in part with opinion.